UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA

       -v.-                             <u>ORDER</u>

GREGORY BAYARD,                   18-CR-771 (CS)

                   Defendant.
------------------------------------------------------x

<u>Seibel, J.</u>

On October 23, 2018, Defendant Gregory Bayard pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343. He admitted that over a five-year period, he stole from an estate he had been appointed to administer and used the money for personal reasons, in violation of his fiduciary duty. (*See* Minute Entry dated Oct. 23, 2018.) The theft totaled almost $1.5 million; was accomplished via approximately 14 checks and more than 70 electronic transfers; and was spent primarily on home renovations, college tuition, other personal expenses and transfers to family members. (Pre-Sentence Report ("PSR") ¶¶ 10-11, 14.) The sentencing was adjourned three times at Defendant's request for medical reasons.

On October 10, 2019, the Court sentenced Defendant principally to 24 months in prison. (Doc. 11.) The Court recommended that Defendant be placed at a Bureau of Prisons ("BOP") medical center because his complex medical issues would need special attention. (*Id.*) The sentence was below the Sentencing Guidelines range of 33-41 months' imprisonment, (PSR at 17), due to Defendant's medical issues and physical condition. Defendant's surrender date was extended once because of his medical situation, and he surrendered to serve his sentence on January 24, 2020. (Doc. 17.)

On June 2, 2020, Defendant moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), seeking immediate release based on the danger that the COVID-19 pandemic presents to one, like Defendant, whose medical condition renders him immunocompromised. (Doc. 22.)  After considering the Government's opposition, (Doc. 24), and Defendant's reply, (Doc. 25), I denied the motion, (Doc. 26).

Under 18 U.S.C. § 3582(c)(1)(A), a court may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not be a danger to the safety of any other person or the community.  Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons: 1) the defendant has a terminal medical condition or because of a serious health condition or impairment is substantially diminished in his ability to provide self-care; 2) the defendant is at least 65 years old, has served ten years or 75% of his sentence, and is experiencing serious deterioration in health as a result of aging; 3) family circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above.

I found that Defendant is immunocompromised as a result of a kidney transplant; that that is a factor identified by the Centers for Disease Control as increasing the risk of severe disease should one be stricken with COVID-19; that while the virus had not spread within Defendant's housing unit, it had spread within the facility;[1] and that Defendant's medical condition, combined with the risk of contracting COVID-19 in a prison, amounted to an

---

[1] Defendant is housed at Federal Medical Center ("FMC") Devens.

extraordinary and compelling reason for release.  But I also found that release was inappropriate in light of the § 3553(a) factors, noting:

> Defendant's offense was serious.  He stole almost $1.5 million, in 80 separate transactions over a period of years.  He did so while a court had placed him in a position of special trust and after promising not to engage in any transactions.  He did not stop stealing until there was nothing more to take.  He committed the offense out of sheer greed. His Guidelines range was 33-41 months, and he was sentenced to 24 months, largely because of his health problems.  He has served approximately 4.5 months of that sentence. Reducing his sentence to time served – cutting the sentence by 84% – would disserve several purposes of sentencing. Such a substantial reduction would not give sufficient weight to the seriousness of the offense; it would undermine respect for the law; it would not amount to just punishment; it would introduce unwarranted sentencing disparities; and it would not sufficiently address the need for general deterrence, given that estate administrators are given access to large sums of money with minimal supervision.

I added, however, that

> Defendant's health could be safeguarded without undermining the 3553(a) factors by a temporary furlough under 18 USC 3622.  The Court recommends in the strongest terms that the Bureau of Prisons give its most serious consideration to temporary release for Defendant, after which he would complete his sentence.  He presents no danger to the safety of another individual or the community, nor does he present a risk of flight.  A short furlough until the corona virus is under better control, rather than a sentence reduction, strikes the Court as the most fair and sensible balance of both the public interest and the risk to Defendant.  And reducing the population at FMC Devens can only help in the efforts to safeguard staff and prisoners there.  Frankly, I cannot think of a reason why this Defendant should not be furloughed or why he has not been furloughed already.  The Government is directed to send a copy of this text order to the Warden and the legal department at FMC Devens.  The Government is further ordered to advise the Court, no later than 6/19/19, as to whether Defendant has been furloughed, and if not, why not.  I further note that this ruling is without prejudice to renewal if conditions change.

(Doc. 26.)[2]

---

[2] I am not alone among my colleagues in urging BOP to consider whether a medical furlough would be appropriate in light of COVID-19.  *See Dov v. Bureau of Prisons*, No. 20-Cv-4343, 2020 WL 3869107, at *4 (S.D.N.Y. July 9, 2020) (collecting cases); *see also, e.g.*, *United States v. Meiri*, No. 15-CR-627, 2020 WL 3605556, at *3 (S.D.N.Y. July 2, 2020) ("The Court strongly recommends that BOP consider whether a furlough would be appropriate in this case.);

The Government responded on June 19 as directed.  It reported that Defendant would not be furloughed, because "the BOP does not furlough inmates due to coronavirus concerns who would return to institutions to complete their sentences."  It added that  Defendant was under consideration for release to home confinement.  Under § 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), BOP was granted expanded authority to transfer inmates to home confinement under 18 U.S.C. § 3624(c).  The Government proposed that it provide a status update by July 10, 2020.  (Doc. 27.)  I approved that proposal, adding that the Government should:

> [P]lease reiterate [to BOP] that in my view, it would seriously undermine the purposes of sentencing to permit Defendant to serve 75% of his sentence at home, but it also, frankly, seems senseless not to let him out until such time as he can be incarcerated without appreciable risk of exposure to COVID-19.  I do not understand why BOP would not use its furlough power to achieve such a result, which would better balance the purposes of sentencing with the health risks to Defendant.  There are certainly steps that could be taken to ensure that a returning prisoner would not bring the virus back into the institution with him.  The 7/10/20 follow-up should explain why the furlough power is not being used in this (or apparently any) pandemic-related case.

(Doc. 28.)

The Government again timely responded.  By letter dated July 10, 2020, it advised that Defendant had been approved for home confinement starting July 29.  It also advised:

> The BOP's exercise of its furlough power under Section 3622 is governed by the regulations at 28 C.F.R. 570.30 *et seq.* and a policy statement by the BOP Director, which was published as BOP Program Statement 5280.09 in January 2011 and was modified in April 2020.  The regulations identify several justifications for furloughs, including inmate transfers between facilities; a family crisis; the development or facilitation of release plans; court or grand jury appearances; or to receive necessary medical care that would otherwise not be

---

*United States v. Stahl*, No.18-CR-694, 2020 WL 1819986, at *2 (S.D.N.Y. Apr. 10, 2020) ("[T]he Court respectfully but strenuously urges the BOP to consider temporarily releasing [Defendant] pursuant o Section 3622(a) unti the threat of COVID-19 has passed.").

available.  The regulations and the program statement limit the duration of furloughs to 30 days.

The justification for a furlough that is most applicable here is Section 570.33(b), which permits furloughs so that the inmate can "[b]e present during a crisis in the immediate family, or in other urgent situations."  Neither the regulations nor the program statement provide any guidance on what would qualify as an "other urgent situation[]."  In April 2020, the BOP issued guidance in light of the pandemic that now permits furloughs for inmates who have been approved for home confinement or transfers to halfway houses and have less than 12 months remaining on their sentences. Other than that, the BOP does not interpret its regulations so as to permit furloughs due to concerns about the pandemic.  In any event, the 30 day limit on furloughs in the regulations is probably too short a duration to address the concerns about the defendant's health here.

(Doc. 30.)

I do not fault the U.S. Attorney's Office for the fact that its July 10, 2020 letter is essentially a non-answer answer.  I assume it is merely passing on what it was told by BOP.  But what BOP has said does not answer my question.  My question was why the furlough power was not being used in this (or apparently any) pandemic-related case.  BOP merely says that BOP has issued guidance that does not cover Defendant Bayard and that it "does not interpret its regulations to permit furloughs due to concerns about the pandemic."  But that is circular.  There has been no explanation as to *why* BOP has issued guidance that does not permit furloughs due to concerns about the pandemic or *why* such concerns could not constitute an "urgent situation" under 28 C.F.R. 570.33(b).  Further, contrary to the suggestion in the letter, the Government has in the past taken the position that furloughs can be extended beyond thirty days.  *See, e.g., United States v. Roberts*, No. 18-CR-528-5, 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020).[3]

_____

[3]In *Roberts*, the Government wrote:

BOP regulations and the governing Program Statement indicate that it is possible for an inmate to obtain, at the discretion of the warden, multiple furloughs.  BOP regulations provide that "[o]rdinarily, Wardens will not grant a furlough to an

That same case makes clear that pandemic-related furloughs would be consistent with 18 U.S.C. § 3622. *Id.*

The Court is also in the dark as to how BOP could find home confinement appropriate in Defendant Bayard's case, given 18 U.S.C. § 3624(c)(6), which requires that BOP's home confinement regulations be "consistent with" 18 U.S.C. § 3621(b). Section 3621(b), in turn, requires that, in determining an inmate's place of confinement, BOP must consider, among other things, "the nature and circumstances of the offense," and "any statement by the court that imposed the sentence [ ] concerning the purposes for which the sentence to imprisonment was determined to be warranted [ ] or recommending a type of penal or correctional facility as appropriate." 18 U.S.C. § 3621(b)(2), (4). The Court has made quite clear that while a temporary furlough is appropriate, it would seriously undermine the purposes of sentencing to permit Defendant to serve 75% of his sentence at home, given the seriousness of the offense, the break he has already gotten because of his health, and several other factors set forth in 18 U.S.C. § 3553(a). Congress has, remarkably, given BOP the power to disregard and undermine the judicially imposed sentence by designating an inmate to serve his sentence on home confinement, but that power – assuming it to be lawful – must be exercised within statutory confines.

---

inmate if: . . . the inmate has been granted a furlough in the past 90 days." 28 C.F.R. 570.36(b)(3). The BOP Program Statement regarding inmate furloughs expands on this provision of the BOP regulations: "If the Warden approves a furlough for such an inmate, he/she documents the reasons in the inmate's central file." BOP Program Statement 5280.09, at 12.6 Accordingly, it is possible for an inmate to receive multiple sequential furloughs, provided that the BOP chooses in its discretion to grant such relief."

No. 18-CR-528-5, Doc. 291 at 7.

6

Accordingly, the Court issues two orders.  First, the official(s) at BOP responsible for issuing guidance and interpreting regulations regarding furloughs are ORDERED to SHOW CAUSE in writing, no later than July 22  , 2020, why BOP has concluded that it cannot furlough prisoners due to pandemic-related concerns.[4]  Second, the highest-level official(s) at BOP responsible for approving Defendant Bayard's home confinement are ORDERED to SHOW CAUSE in writing, also by July 22, 2020, why, in approving Defendant Bayard for home confinement, BOP disregarded or at least discounted this Court's repeated statements that home confinement would undermine the purposes of sentencing set forth in § 3553(a).  Those individuals should be prepared to testify at a hearing on short notice should that be necessary.

SO ORDERED.

Dated: July 15, 2020
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[4]In the Court's view, the sentence should not continue to run during a furlough that may be lengthy.  If BOP believes otherwise, it shall explain that view and the reasoning behind it; whether it is required by statute, regulation or just BOP policy; and if just BOP policy, what would be required to change it. Further, BOP shall address whether temporary release of a prisoner, without the sentence continuing to run, could be accomplished through the Presidential power to issue temporary reprieves, *see* U.S. Const. art. II, § 2; whether that power can be delegated; and, if so, whether the President has delegated it to the BOP or another component of the Department of Justice.