UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                              ORDER

GREGORY BAYARD,                           18-CR-771 (CS)

               Defendant.
------------------------------------------------------x

Seibel, J.

       Familiarity with prior proceedings in this case, including my Order of July 15 ,2020, (Doc. 31), is presumed.

       I expect that by now Defendant Gregory Bayard is at home.  This privileged individual could have lived a comfortable life without turning to crime, and stole almost $1.5 million out of sheer greed.  The vast majority of the people I sentence had none of the advantages Mr. Bayard had:  stable, intact family of origin; no abuse, neglect, mental illness or addiction; college education; supportive, educated, successful spouse and children; and remunerative, respectable employment.  Yet he is going home after having served 25% of his sentence, while almost none of the others will have that benefit.  And he is white, while most of them are not.  This result and others like it will, in my view, do serious damage to the faith of the public in the fair administration of justice.

       I recognize that Mr. Bayard has serious health problems that prompted the decision of the Bureau of Prisons ("BOP") to release him.  But BOP's reasons for reducing his prison time by 75%, rather than furloughing Defendant during the pandemic and having him serve out the sentence when it is safe to do so, ring hollow.  The Acting Warden at FMC Devens says in his declaration that the Court's view – that a sentence reduction would be unjust and Mr. Bayard

should instead be furloughed – was "given fullest consideration," but that he decided that allowing Defendant to serve his sentence on home confinement was nevertheless appropriate because "Bayard met all the eligibility considerations for placement into home confinement under current BOP policy and guidelines, as well as the directives of the Attorney General." (Doc. 34-9 ¶ 15.)  In other words, because Mr. Bayard fit the BOP-created criteria, my recommendation did not matter.  That those criteria are such that white-collar criminals can meet them more easily than others appears not to have concerned anyone at BOP or the Department of Justice ("DOJ").

The rationale for BOP not using its furlough authority is equally weak.  I ordered BOP to explain why it had concluded that it cannot furlough prisoners due to pandemic-related concerns. (Doc. 31.)  In response, a BOP administrator submitted a ten-page declaration, (Doc. 34-1), in which all of one paragraph is responsive to that Order.[1]  In it she states that BOP uses home confinement rather than furloughs because inmates on home confinement are monitored by United States Probation Offices, whereas inmates on furlough have to be monitored by BOP, which lacks sufficient staff and equipment.  (*Id.* ¶ 14.)  The declaration reflects no effort on the part of BOP to seek additional supervision resources given the pandemic, or to determine if Probation would be willing to monitor inmates on furlough.  Indeed, Probation might be happy to monitor an inmate for a temporary period until he is returned to prison, rather than monitoring him for the entirety of that inmate's remaining sentence.

---

[1]The declaration did not, as ordered, address why concerns about the pandemic could not constitute an "urgent situation" under 28 C.F.R. 570.33(b), or reconcile the fact that the Government has in the past taken the position that furloughs can be extended beyond thirty days. (*See* Doc. 31 at 5.)

The two declarations reveal a bureaucratic, check-the-box mindset which pays only lip service to the views of the sentencing judge and into which justice and fairness do not seem to factor.

Moreover, the statutory scheme that permits BOP to disregard and undermine the judicially imposed sentence by designating an inmate to serve his sentence on home confinement presents separation of powers concerns. The legislative branch has purported to give the executive branch the power to undo the rulings of the judicial branch. No party has raised this issue – the defendant obviously has no interest in doing so, and the United States Attorney's Office, which is probably no happier than I am about Mr. Bayard's release to home confinement, is part of the same executive branch as BOP – and I do not purport to adjudicate it. But I suggest that high-level legal minds at DOJ, as well as Congress, revisit both the legality and the wisdom of giving BOP (which, aside from its bureaucratic mentality, has every incentive to rid itself of prisoners whose care will be expensive) the power to release criminals from prison when the sentencing judge – who knows the case better than BOP – thinks that that person needs to serve his sentence.

I hereby ORDER the Government to send a copy of this Order, as well as my July 15, 2020 Order, to the Assistant Attorneys General in charge of the DOJ Criminal Division and the Office of Legal Counsel, the Director of the Bureau of Prisons, and the Deputy Solicitor General responsible for criminal matters. I am under no illusions as to how seriously the concerns of one

judge will be taken, but I make this order so that responsible officials at DOJ will at least have to make a decision as to whether to re-think its positions and policies.

SO ORDERED.

Dated: August 3, 2020
      White Plains, New York

                                          _____
                                          CATHY SEIBEL, U.S.D.J.